J-S32003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.A.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.P, MOTHER | : | No. 1962 EDA 2016 |

Appeal from the Decree May 23, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s):  51-FN-002024-2013,
CP-51-AP-0000255-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: D.N.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.P, MOTHER | : | No. 1963 EDA 2016 |

Appeal from the Decree May 23, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s):  51-FN-002024-2013,
CP-51-AP-0000254-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: B.A.P., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.P, MOTHER | : | No. 1964 EDA 2016 |

Appeal from the Decree May 23, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s):  51-FN-002024-2013,
CP-51-AP-0000253-2016

IN THE INTEREST OF: K.D.P., A MINOR : IN THE SUPERIOR COURT OF PENNSYLVANIA

:
:
:
:
:
:

APPEAL OF: D.P, MOTHER : No. 1965 EDA 2016

Appeal from the Decree May 23, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Juvenile Division at No(s):  51-FN-002024-2013,
CP-51-AP-0000243-2016

BEFORE:   GANTMAN, P.J., STABILE, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 23, 2017**

Appellant, D.P. ("Mother"), appeals from the decrees entered in the Philadelphia County Court of Common Pleas Family Court Juvenile Division, which granted the petitions of the Department of Human Services ("DHS") for involuntary termination of Mother's parental rights to her four minor children, N.A.P., D.N.P., B.A.P., and K.D.P. ("Children").  We affirm.

In its opinion, the Juvenile Court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we will only briefly summarize them.  Mother is the natural parent of Children.  DHS first became involved with the family on May 10, 2013, after receiving a general protective service report alleging, *inter alia*, Mother had left B.A.P. and another child home alone for more than 24 hours.  The report further alleged

_____

*Former Justice specially assigned to the Superior Court.

- 2 -

that Mother was unemployed, suffered from substance abuse, and had a history of domestic violence. DHS obtained an order for protective custody of D.N.P. and B.A.P. on May 20, 2013. DHS returned D.N.P. and B.A.P. to Mother on August 23, 2013. On March 31, 2014, St. Joseph's Hospital staff observed Mother under the influence of an unknown substance that they believed was Phencyclidine (PCP). Mother was belligerent with the hospital staff and refused to cooperate with DHS. As a result, DHS obtained an order for protective custody of N.A.P., D.N.P., and B.A.P on April 1, 2014. The court adjudicated N.A.P., D.N.P., and B.A.P dependent on April 10, 2014. K.D.P. was born in November 2014 and lived with Mother until November 5, 2015, when Mother stabbed a neighbor, fled the scene, and left K.D.P. alone in her crib. Later that evening, the police found K.D.P. alone and alerted DHS. DHS obtained an order for protective custody of K.D.P. Police arrested Mother for the stabbing on November 6, 2015. The court adjudicated K.D.P. dependent on November 10, 2015, and placed her in foster care.

On March 22, 2016, DHS filed petitions for the involuntarily termination of Mother's parental rights to N.A.P., D.N.P., and B.A.P. pursuant to 23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b) of the Adoption Act, and a petition for the involuntarily termination of Mother's parental rights to K.D.P. under Sections 2511(a)(1), (a)(2), and (b). At the May 23, 2016 termination hearing, DHS added Section 2511(a)(5) to its

petition to terminate Mother's parental rights to K.D.P. On May 23, 2016, the court entered decrees involuntarily terminating Mother's parental rights to Children under Sections 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b). The court also terminated the parental rights of the fathers, who did not contest termination; they are not involved in this appeal. Mother timely filed notices of appeal and concise statements of errors complained of on appeal per Pa.R.A.P. 1925(a)(2)(i).

Mother raises three issues for our review:

> WHETHER THE [JUVENILE] COURT ERRED IN TERMINATING [MOTHER'S] PARENTAL RIGHTS UNDER 23 PA.C.S.A. [§] 2511(A)(1), THE EVIDENCE HAVING BEEN INSUFFICIENT TO ESTABLISH MOTHER HAD EVIDENCED A SETTLED PURPOSE OF RELINQUISHING PARENTAL CLAIM, OR HAVING REFUSED OR FAILED TO PERFORM PARENTAL DUTIES?

> WHETHER THE…EVIDENCE WAS SUFFICIENT TO ESTABLISH THAT [MOTHER] HAD REFUSED OR FAILED TO PERFORM PARENTAL DUTIES, CAUSED CHILDREN TO BE WITHOUT ESSENTIAL PARENTAL CARE, THAT CONDITIONS HAVING LED TO PLACEMENT HAD CONTINUED TO EXIST, OR FINALLY THAT ANY OF THE ABOVE COULD NOT HAVE BEEN REMEDIED?

> WHETHER THE EVIDENCE WAS SUFFICIENT TO ESTABLISH THAT TERMINATION OF PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF…CHILDREN, UNDER 23 PA.C.S.[A. §] 2511(B)?

(Mother's Brief at 5).

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our

standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972

A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. *In re R.L.T.M.*, 860 A.2d 190, 191-92 (Pa.Super. 2004).

*In re Z.P., supra* at 1115-16 (quoting *In re Adoption of K.J.*, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed petitions for the involuntary termination of Mother's parental rights to Children on the following grounds:

**§ 2511.  Grounds for involuntary termination**

**(a)   General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*     \*     \*

(5)  The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (a)(2), (a)(5), (a)(8), and (b).[1] "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." **In re Z.P., supra** at 1117.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the

_____

[1] Mother limits her appellate challenge to the court's termination decisions to Sections 2511(a)(1), (a)(2), and (b). Therefore, we will not review the court's decisions under Sections 2511(a)(5) and (a)(8).

statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of…her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

Termination under Section 2511(a)(1) involves the following:

To satisfy the requirements of [S]ection 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition,

Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties.

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for…her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted). Regarding the six-month period prior to filing the termination petition:

[T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory

- 8 -

provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of…her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." *Id.* at 340. The fundamental test in termination of parental rights under Section 2511(a)(2) was long ago stated in the case of *In re Geiger*, 459 Pa. 636, 331 A.2d 172 (1975), where the Pennsylvania Supreme Court announced that under what is now Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In Interest of Lilley*, 719 A.2d 327, 330 (Pa.Super. 1998).

Under Section 2511(b), the court must consider whether termination

will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond." *Id.* Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have…her rights terminated." *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001). This Court has said:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative

performance.

This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.

Because a child needs more than a benefactor, parental duty requires that a parent exert [herself] to take and maintain a place of importance in the child's life.

Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of…her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M., supra* at 855 (internal citations omitted). "[A] parent's basic constitutional right to the custody and rearing of…her child is converted, upon the failure to fulfill…her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *Id.* at 856.

After a thorough review of the record, the briefs of the parties, the applicable law, and the opinion of the Honorable Lyris F. Younge, we conclude Mother's issues merit no relief. The Juvenile Court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Juvenile Court Opinion, filed December 15, 2016, at 4-7)

- 11 -

(finding: **(1-2)** Mother received Family Single Case Plan ("FSP") permanency objectives in April 2014 to address mental health issues, substance abuse, unstable employment, and visitation; DHS social worker credibly testified Mother had history of mental health concerns, substance abuse, and domestic violence; throughout dependency, Mother failed to procure steady employment, maintain sobriety for substantial period, or consistently participate in either intensive outpatient drug and alcohol cessation program or dual diagnosis treatment program for mental health ailments; prior to Mother's incarceration, Mother visited N.A.P., D.N.P., and B.A.P. weekly; upon her release from imprisonment, Mother visited Children sporadically; DHS did not allow Mother to have unsupervised visits with Children throughout dependency; at time of termination hearing, N.A.P., D.N.P., and B.A.P. had been in foster care for 23 months [and K.D.P. had been in foster care for 7½ months], yet Mother had failed to meet her FSP objectives; Mother did not remedy conditions, which led to Children's placement in foster care, and she was unlikely to remedy conditions within reasonable time; **(3)** DHS employee credibly testified Children would not suffer irreparable harm if court terminated Mother's parental rights to Children; N.A.P., D.N.P., and B.A.P. displayed no negative behaviors when Mother was incarcerated or when their visits with Mother became more sporadic; Children have stronger bond with foster mother, whom N.A.P., D.N.P., and B.A.P. acknowledge as "mom"; termination of Mother's parental rights is in

Children's best interests). Accordingly, we affirm on the basis of the Juvenile Court's opinion.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2017

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: B.P. | : | ~~CP-51-DP-0001044-2013~~ |
| | : | CP-51-AP-0000253-2016 |
| | : | |
| IN RE: D.P. | : | ~~CP-51-DP-0001046-2013~~ |
| | : | CP-51-AP-0000254-2013 |
| | : | |
| IN RE: K.P. | : | ~~CP-51-DP-0002725-2015~~ |
| | : | CP-51-AP-0000243-2016 |
| | : | |
| IN RE: N.P.  . | : | ~~CP-51-DP-0000794-2014~~ |
| | : | CP-51-AP-0000255-2016 |
| | : | |
| APPEAL OF: D.P., Mother | : | Superior Court |
| | : | No.   1964   EDA 2016 |
| | : | No.   1963   EDA 2016 |
| | : | No.   1965   EDA 2016 |
| | : | No.   1962   EDA 2016 |

OPINION

**Younge, J.**

This appeal arises from this Court's Order on May 23, 2016, terminating the parental rights of
D. P.        ("mother"), pursuant to the petitions filed on behalf of the Department of Human
Services ("DHS") by the City of Philadelphia Solicitor's Office. Jay Stillman, attorney for mother,
filed a timely appeal from the May 23, 2016 order terminating mother's parental rights including
an attached Concise Statement of Errors, Affidavit of Service, and other related documents
necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On May 10, 2013 DHS received a General Protective Services (GPS) report alleging that Mother
left B.P.          in the family's home unsupervised. Mother traveled out of town on May 9, 2013
and left D.P. in the care of the child's paternal grandmother. The report stated mother contacted
paternal grandmother on May 10, 2013 to advise her B.P.          had been left in the family
home unsupervised for more than twenty four hours (24). D.P.'s school contacted maternal
grandmother because mother failed to retrieve D.P. from school at the end of the school day. The
report also alleged B.P. suffered from an unknown medical condition. The report further alleged

mother was unemployed, suffered from substance abuse and had been arrested in May 2012 pursuant to a domestic violence dispute. The report was substantiated. DHS obtained an Order of Protective Custody (OPC) on May 20, 2013 for D.P. and B.P.

On August 23, 2013, Mother was convicted of driving without proper child restraint system. D.P. and B.P. were returned to Mother's care with DHS supervision. On October 21, 2013, DHS supervision and the children's dependent petitions were discharged.

On November 25, 2013, DHS received a GPS report alleging that N.P., born prematurely on June 2013 with a chronic respiratory difficulties, was not receiving the appropriate medical care. N.P. had a history of retinopathy due to prematurity which could lead to blindness, if not treated properly. The report stated Mother failed to make the necessary medical appointments for N.P. Mother failed to take N.P. to his ophthalmologist and developmental appointments. The report alleged mother had been incarcerated prior to giving birth to N.P. The report was substantiated.

On April 1, 2014, DHS obtained an OPC for D.P. B.P. and N.P. after mother was observed to be under the influence of an unknown substance. Mother was belligerent and refused DHS services and a drug screen. The staff at St. Joseph's Hospital suspected mother was under the influence of Phencyclidine ( PCP).

At a Shelter Care Hearing held on April 3, 2014 for D.P, B.P. and N.P., Judge Johnson lifted the OPC and ordered temporary commitment to DHS. Mother was ordered to the Clinical Evaluation Unit ( CEU) for a drug screen.

At the Adjudicatory Hearing for D.P., B.P. and N.P. held on April 10, 2014, Judge Johnson discharged the temporary commitment to DHS, adjudicated the children dependent and committed them to DHS. Judge Johnson issued a stay away order against Mother from the care giver paternal grandfather of D.P. and B.P. Mother was referred to CEU for a drug and alcohol screen and dual diagnosis assessment and three random drug and alcohol screens. Judge Johnson ordered all of Mother's contact with the children was to be supervised.

On July 15, 2014, the Initial Permanency Review Hearing for D.P., B.P. and N.P. was held before Judge Johnson, who ordered that the children remain committed to DHS. The children were placed in separate homes.

On September 29, 2014, a Permanency Review Hearing for D.P. was held before Judge Johnson, who ordered that DHS implement kinship care in the home of parental grandfather.

On October 14, 2014 a Permanency Review Hearing for D.P., B.P. and N.P. was held before Judge Johnson where the Court found mother had been minimally compliant with the plan for reunification. K.P. was born on November  2014.

On January 8, 2015, a Permanency Review Hearing for D.P., B.P. and N.P. was held before Judge Johnson, who ordered that they remain committed to DHS. The Court found mother was receiving inpatient drug and alcohol treatment. The Court ordered mother to comply with her FSP objectives, services and recommendations.

On June 6, 2015, D.P. B.P. and N.P. were removed from paternal grandfather's care and placed in respite foster care.

2

On June 30, 2015, a Permanency Review Hearing for D.P., B.P. and N.P. was held before Master Ciccone, who ordered that the children remain committed to DHS. Mother was referred to the CEU for a forthwith drug and alcohol screen, a dual diagnosis and monitoring.

On July 28, 2015, DHS received a GPS report alleging that mother was a patient at a local hospital experiencing severe manic episodes and had admitted she had consumed alcohol. Mother had a history of depression and bipolar disorder. The report further alleged mother was agitated, thrashing and verbally abusive to the hospital staff. There report indicated mother resided with K.P.. alone. K.P was transported to DHS.

On September 14, 2015, Judge Johnson conducted a Permanency Review Hearing for D.P., B.P. and N.P. and ordered the children remain committed to DHS. After review of the evidence, the Court held mother was discharged from a treatment center due to aggressive behavior and was admitted to the hospital due to a positive screen for Phencyclidine (PCP). Mother was referred to CEU for drug and alcohol screen and proof of substance abuse treatment. The Court ordered DHS to obtain an OPC for K.P. if mother tested positive for PCP.

On November 5, 2015, DHS received a GPS report alleging Philadelphia Police responded to a telephone call reporting mother stabbed a neighbor in her residential building. Mother fled the scene prior to the arrival of the police. The report alleged police found K.P. in her crib inside mother's apartment where there was minimal furniture and multiple male visitors. The report further alleged drugs were being sold from mother's apartment. DHS obtained an OPC for K.P. and placed her in a foster home through the Juvenile Justice Center (JJC).

At the Shelter Care hearing for K.P. held on November 6, 2015, the OPC was lifted and K.P. temporary commitment to DHS was ordered to stand. Mother's whereabouts were unknown.

On November 6, 2015, Mother was arrested and charged with aggravated assault, possessing of an instrument of crime with intent to employ it criminally, simple assault, and recklessly endangering another person pursuant to the incident in the November 5, 2015 GPS report. Mother was incarcerated at Riverside Correctional Facility (FCF)

The matter was the listed on a regular basis before Judges of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. $ 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On May 23, 2016, during the Termination of Parental Rights hearing for mother, the Court found by clear and convincing evidence that mother's parental rights as to B.P., D.P., K.P., and N.P. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

The appeal of mother is as follows:

**Issues**
1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Mother

3

with her children and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the children.

2) Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

**Discussion**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, mother's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio,* 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the children. The Court found by clear and convincing evidence that the mother refused or failed to perform her parental duties.

In the instant matter, mother was given FSP objectives to address issues of stable employment, treatment for mental health and drug and alcohol abuse, and visitation (N.T. 5/23/16, pg. 41). Testimony of the social worker revealed, mother failed to maintain sobriety for a substantial period of time (N.T. 5/23/16 pg. 46). Moreover, mother failed to demonstrate she could successfully complete an intensive outpatient drug and alcohol cessation program and was discharged due to inactivity. (N.T. 5/23/16, pgs. 42-43) Mother's failed to maintain continuous participation in a dual diagnosis treatment in the several programs she attended. (N.T. 5/23/16, pgs. 43-46) Testimony of the social worker revealed that mother was discharged from the treatment programs due to inactivity, due to incidents at facilities or lack of participation due to incarceration. (N.T. 5/23/16 pgs. 43-44) Furthermore, the social worker's testimony revealed mother failed to demonstrate an ability to be employed during the life of the placement of the children. (N.T. 5/23/16, pg. 46)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort,

4

to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

In the present matter, during the twenty three months (23) the children have been in DHS care, mother has struggled with maintaining sobriety as well as stable mental health. (N.T. 5/23/16, pg. 65) The social worker's testimony revealed mother's history of mental health, substance abuse and domestic violence issues necessitated the children's placement with DHS (N.T. 5/23/16 pgs. 40-41) Furthermore, prior to mother's incarceration, mother visited weekly with D.P., B.P. and N.P.. and monthly with K.P. ( N.T. 5/23/16, pg 48) After mother's release from incarceration, mother was sporadic in her visits with D.P., B.P., K.P. and N.P. (N.T. 5/23/16 pg. 48) There was no recommendation to increase the supervised visits to unsupervised. (N.T. 5/23/16, pgs. 66).

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002).

As of the May 23, 2016 hearing, B.P., D.P.,        , and N.P. have been in care for at least twenty three (23) months, and mother had not progressed in her FSP permanency objectives in a way that would permit reunification to occur. (N.T. 5/23/16, pgs. 45–49) Moreover, the Court found the repeated and continued incapacity, abuse, neglect, or refusal to parent has caused the children to be without essential parental care. (N.T. 5/23/16, pg. 66).

§2511 (a)(5) requires that :

> (5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

5

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate mother's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. *In re Involuntary Termination of C.W.S.M and K.A.L.M.*, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In re C.S.*, 761 A.2d 1197(Pa. Super. 2000). In the instant matter, the testimony established that the children, D.P., B.P., K.P and N.P. would not suffer any irreparable emotional harm if mother's parental rights were terminated. (N.T. 5/23/16, pgs. 51-56) Testimony of the social worker testified the D.P., B.P. and N.P. are very close to their foster mother. (N. T. 5/23/16 pgs. 52-53) Furthermore, the social worker testified D.P., B.P. and N.P. have bonded with their foster parent and acknowledge her as "Mom". (N.T. 5/23/16, pg. 62) Testimony described the children, D.P., B.P., K.P. and N.P. were more bonded with foster caregivers than mother. (N.T. 5/23/16 pg. 65) Furthermore, social worker testified, D.P., B.P. and N.P. were found not to display negative behaviors during mother's incarceration or decrease in consistent visitation since her release from incarceration. (N.T. 5/23/16, pg. 65) Testimony established there is a parent/child bond between D.P., B.P. and N.P. and their foster parent which did not exist between the children and their mother. (N.T. 5/23/16, pg. 66)

The Court stated concern about reunification or permanency if visitation was not expanded as such the case in this particular matter. (N.T. 5/23/16, pg. 67-68) The Court found convincing the testimony that the children indicated they would be fine in their current placement with the foster parent. (N.T. 5/23/16, pg. 68) Hence, the Court concluded the children would not suffer irreparable harm. (N.T. 5/23/16, pgs. 68-69).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the children, to change their goal to adoption (N.T. 5/23/16, pg. 67-69)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause B.P., D.P., K.P., and N.P. to suffer irreparable harm and it is in the best interest of

the children, based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate mother's parental rights.

Accordingly, the Trial Court's Order entered on May 23, 2016, terminating the parental rights of mother,                should be properly affirmed.


By the Court:


7

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: B.P. | : | CP-51-DP-0001044-2013 |
| | : | CP-51-AP-0000253-2016 |
| | : | |
| IN RE: D.P. | : | CP-51-DP-0001046-2013 |
| | : | CP-51-AP-0000254-2013 |
| | : | |
| IN RE: K.P. | : | CP-51-DP-0002725-2015 |
| | : | CP-51-AP-0000243-2016 |
| | : | |
| IN RE: N.P.  . | : | CP-51-DP-0000794-2014 |
| | : | CP-51-AP-0000255-2016 |
| | : | |
| APPEAL OF: D.P., Mother | : | Superior Court |
| | : | No.  1964   EDA 2016 |
| | : | No.  1963   EDA 2016 |
| | : | No.  1965   EDA 2016 |
| | : | No.  1962   EDA 2016 |

## PROOF OF SERVICE

I hereby certify that this court is serving, today, December 15, 2016, the foregoing Opinion, by regular mail, upon the following person(s):

Bennette Harrison, Esquire

City of Philadelphia Law Department

1515 Arch Street, 16th Floor

Philadelphia, PA 19103


Lee Kuhlmann, Esquire

1800 JFK Blvd., Suite 300

Philadelphia, PA 19103

Lisa Visco, Esquire

1800 JFK Blvd., Suite 300

Philadelphia, PA 19103


Jay Stillman, Esquire

1901 JFK Blvd., Suite 1913

Philadelphia, PA 19103


BY THE COURT

Honorable Lyris F. Younge

9